## CRINER et al. v. DAVENPORT-BETHEL CO.

No. 20812.  Opinion Filed June 24, 1930.

(2) That the plaintiff is the owner of and entitled to the immediate possession of the following described real estate and premises: "Alsace addition to the city of Tulsa, Okla., according to the recorded plat thereof."

(3) That the defendant wrongfully and unlawfully keeps the plaintiff out of possession of said premises and has so wrongfully and unlawfully kept the plaintiff from the use and possession of the same since the 1st day of September, 1928, to the plaintiff's damage in the sum of $1,000.

### Second Cause of Action.

(1) That the defendant claims some right, title, or interest in or to the real estate herein described, but that the plaintiff states that the said claim is without right as against the plaintiff and that the same constitutes a cloud upon the title of the plaintiff which should be removed.

### Third Cause of Action.

That the defendant heretofore, by means of force and violence and by means of threats directed against this plaintiff, its agents and servants, has prevented and still prevents the plaintiff from coming upon its property and from exercising its rights of ownership thereto; that the said defendant did on, to wit, the 25th day of September, 1928, wrongfully, unlawfully, and forcibly exclude the plaintiff, its agents, and servants from the said premises and prevented the plaintiff from entering into any of the buildings thereon, the said buildings consisting of four dwelling houses, garages, and other buildings in connection with same, by means of locking the doors of said buildings, and preventing the plaintiff, by means of threats of force and violence against the plaintiff, its agents, and servants, from unlocking said doors and from exercising any rights of ownership upon said premises.

Wherefore, plaintiff prays judgment against the defendant for possession of the said premises; that the defendant be ejected therefrom; that the title of the plaintiff be quieted against the defendant and against all persons claiming under or through him, and the plaintiff further prays that the defendant be permanently enjoined from interfering with or molesting the plaintiff in the exercise of its rights to said premises, from disturbing or interfering with the possession of said premises by the plaintiff, and that the defendant be permanently enjoined from setting up or asserting any claim of right, title, or interest in or to the said premises or any part thereof, and further prays for damages in the sum of $1,-000.

Sam A. Neely and J. P. Evers, for plaintiffs in error.

Robinson & Jones, for defendant in error.

CULLISON, J. This case was commenced by the defendant in error, Davenport-Bethel Company, a corporation, in the district court of Tulsa county, Okla., against W. M. Criner et al., plaintiffs in error, and for convenience we will refer to the parties as they appeared in the lower court.

Plaintiff brings this suit to quiet title, adjustment of disagreements between plaintiff and defendants growing out of a joint building enterprise, and for injunctive relief.

On October 2, 1928, the court granted a restraining order, and on October 10th a temporary injunction was granted.

Plaintiff, for its cause of action, states:

(1) That it is now and at all times hereinafter mentioned was a corporation.

Defendant for his answer to plaintiff's petition states:

(1) This defendant denies each and every material allegation as set forth in plaintiff's petition, except such as is hereinafter specifically admitted.

(2) This defendant admits that the plaintiff is a corporation as is set forth and alleged in its petition.

(3) This defendant specifically denies that the plaintiff is the owner of real estate set forth in its petition; and he further denies that the plaintiff is entitled at the time of filing of said petition, or at any time, to the possession of said property.

(4) This defendant specifically denies that he has wrongfully or unlawfully, or either, has kept the plaintiff out of the use and possession of the property described in his petition; or has damaged the plaintiff in any amount whatsoever.

By way of cross-petition, the defendant states:

(1) This answering defendant states to the court that on or about the first of February, 1928, the exact date being unknown to this defendant, this defendant and the plaintiff, the Davenport-Bethel Company, a corporation, entered into an oral contract whereby and wherein it was promised and agreed by and between the parties hereto that they, the plaintiff and defendant, would purchase and improve the following described real estate, to wit: "Alsace addition to the city of Tulsa, Okla., according to the recorded plat thereof," and in which agreement it was specifically agreed and understood that the plaintiff was to finance the purchasing and improving of said real estate, and build thereon certain residences, the specific specifications and plans not being at that time agreed upon; but this defendant states and makes known to the court that it was specifically agreed and understood, orally, by and between the plaintiff and defendant that this defendant, after managing the construction of any building or buildings on the real estate hereinabove described. that the same was to be rented or sold and that this defendant was to have one-half of the net profits received from the same.

This defendant further states that in accordance with said contract as above set forth, he proceeded to and did draw, design, plan, and supervise and had erected on said addition, at the expense of the plaintiff. four dwellings, which he states and makes known to the court was and is now of the value of $20,000; that in carrying out the contract he continuously expended all of his time and has truthfully and faithfully done and performed all things agreed to have been done by him.

(2) This defendant further states to the court that the plaintiff willfully, wrongfully, and unlawfully refused to and still refuses to carry out its contract with this defendant; that, as he is informed and believes, and therefore states the facts to be that, by reason of the contract as above set forth a special partnership was created as a matter of law by and between this defendant and the plaintiff and that he is entitled to an accounting herein.

(5) This defendant further states to the court that at the time of entering into the oral contract as above set forth, it was agreed and understood by and between the plaintiff and defendant that the property set out in plaintiff's petition was to be deeded by the record owner, B. F. Pettus, Jr., to one W. L. Criner; that said deed was executed by the said B. F. Pettus, Jr., and delivered to the said W. L. Criner to be by him held as trustee for the use and benefit of this defendant and the plaintiff; and that since the date of execution and the delivery of the said deed, the title to said property was vested in the said W. L. Criner for the use and benefit of this defendant and the plaintiff in accordance with the terms of the contract as above set forth: that the plaintiff through connivance and fraud has secured the actual possession of the said deed, and has willfully and fraudulently refused to place the same of record for the purpose and with the intention of defrauding this defendant of his rights as above set out; and that this plaintiff now is in actual possession of said deed.

(6) This defendant further states to the court that the plaintiff, disregarding his contract with this defendant as above set out, did on or about the 18th day of June, 1928, without authority of law, execute a certain mortgage on certain portions of the real estate above described, to the Oklahoma Savings & Loan Association, for the sum of $4,300, which said mortgage is now of record in mortgage book 564, page 607, of the records of the county clerk of Tulsa county, Okla.; that on the same day and in the same book of said records above referred to, at page 609 thereof, the plaintiff unlawfully mortgaged to the said loan company a certain portion of said premises for the sum of $4,200.

Wherefore, this defendant prays for an accounting between himself and the plaintiff herein, and that W. L. Criner and the Okla-

homa Savings & Loan Association be made parties to this action; that the plaintiff be required to produce and have recorded the deed as referred to as having been made by B. F. Pettus, Jr., to the said W. L. Criner; that the mortgages given by the plaintiff to the Oklahoma Savings & Loan Association, as above referred to, be canceled, set aside, and held for naught; and that the said Oklahoma Savings & Loan Association be perpetually enjoined from asserting any right or interest in and to the property above described; that this court appoint some proper and suitable person as receiver of the property above described; that a full and true accounting be had by and between the plaintiff and defendant hereto, and that this defendant have and take judgment for such an amount as said accounting shows due to him; that this defendant have judgment for his cost herein laid out and expended; and have such other and further judgments made in his behalf as in equity and good conscience he might be entitled.

Plaintiff alleges it is the owner of the property involved and entitled to immediate possession, and brings this action to quiet title in it.

Defendant denies generally the allegations of plaintiff's petition, and further answering, says that on or about February 1, 1928, he and the plaintiff entered into an oral contract by the terms of which they would purchase and improve the property involved; that plaintiff was to finance the purchasing and improving of said property; that resident houses were to be built thereon; that as said houses were built they were to be rented or sold and the defendant was to have one-half of the profits arising therefrom.

Defendant says he did build four houses on said land and that the value thereof is about $20,000.

The defendant further states that under their agreement the land purchased was to be deeded to W. L. Criner, a brother of this defendant, and by him held in trust for the benefit of the plaintiff and defendant.

Defendant further alleges that said deed was executed and delivered to the said W. L. Criner and that the plaintiff through connivance and fraud secured possession of said deed.

In order to adjudicate the difficulties between these parties it becomes necessary to consider the purported oral contract or agreement alleged to exist between them.

Plaintiff says nothing about a contract in its petition filed in the lower court.

Defendant pleads the terms of a contract as a defense.

We are unable to find in the record any specific agreement or contract, written or oral, entered into between the plaintiff and defendant, but do find from the testimony of the plaintiff a certain conversation or negotiations had between them, which we treat as the contract or understanding had, which relates to the essential facts, as follows, to wit:

Direct examination of Mr. H. E. Bethel by Mr. Robinson (C.-M. 77-80):

"Q. What was said between you there, if anything? A. I asked him what he was doing and he said he wasn't doing anything right then, but he knew of some lots that could be bought at a price he thought was right, and I says, 'Why don't you buy them.' He said, 'I haven't got the money available now.' He says, 'I think it will be a good proposition to buy those lots and build some houses on them if I could arrange it' We talked along that line some 10 or 15 minutes, and finally I told him we would go out and look at it. I meant Mr. Davenport and I of our company; so we went out that afternoon and looked at these lots and decided the price was all right, $8,000 for the two blocks, or 20 lots. Q. Was there any arrangements made that you would talk a little more about it after you investigated it? A. Yes, sir; I told him we would investigate and call him later, which I did, I believe, next morning, and asked him to come up to the office that morning and I told him we would buy those lots on that figure and we would build a few houses, and if we were successful, why we would build up the addition. We agreed on the plans. He was to look after the building of them, superintending, plans, and that end of it, and we were to finance the labor until the houses were completed, then put mortgages on there to pay off the material bills and to sell the houses and divide the profits 50-50."

We think the above testimony embodies the essential terms of the contract between them when they entered into this mutual buying and building arrangement.

Further examination of Mr. H. E. Bethel, by the trial court (C.-M. 77, 80):

"Q. You were to construct two houses on the lots to start with? A. Two or three. Q. And he was to have the supervision over the construction and take care of that feature? A. Yes, sir. Q. And then I understood you to say you were then to put a loan on the houses? A. After completed. Q. Sell them and split the profits? A. Yes, sir; profits above the mortgage. Q. Thereafter, if it proved to be a profitable venture, to build the rest of them? A. Yes, sir. Q.

Did you mean you were to split the profits on the two houses? A. Over and above the cost. Q. Of the two houses? A. Yes, sir; all the houses. Q. And what was said at that time with reference to the financing of it? A. We were to finance all the material up to the time they were finished, then we was to put mortgages on them to pay the material bills, which we did."

We think and find from the evidence that the contract between them in short was: Plaintiff agreed to furnish the money to pay for the land, the material in the buildings, and for the labor performed thereon, and when the houses were built and sold, the plaintiff and defendant would divide the profits, if any, arising therefrom.

Plaintiff in error, defendant below, contends that it was agreed the deed to the property involved was to be executed in the name of W. L. Criner, a brother of the defendant, and by him held in trust for plaintiff and defendant.

We find from the evidence the deed was made in the name of W. L. Criner, as grantee, and the same was delivered to the plaintiff herein. When plaintiff received the deed, they erased the name of W. L. Criner, grantee therein named, and wrote therein the name of Davenport-Bethel Company, as grantee.

Defendant contends that the change in the name of the grantee in the deed created no title in Davenport-Bethel Company, and that the change of the name of the grantee in said deed was a fraud on the defendant.

Plaintiff denies there was any agreement that the deed to the whole property involved should be executed in the name of W. L. Criner as grantee, but does say that it was agreed and understood that when a house was completed the plaintiff company would deed to W. L. Criner the individual lot upon which the house was located; that the said W. L. Criner was to apply for and secure a loan upon completed houses, and execute a mortgage against the same to secure said loan and then transfer or deed back said house and lot to the plaintiff herein.

Plaintiff further says that the said W. L. Criner refused to carry out said arrangement, and that it, the plaintiff, was compelled to have the mortgage executed against said property made and executed in the name of Davenport-Bethel Company, plaintiff herein, as it was the owner of the property.

Plaintiff further says there never was any agreement or understanding that the entire property purchased was to be deeded to W. L. Criner.

We have made a very careful study of all the evidence in the case, and from said evidence find the facts to be about as follows, to wit:

### Findings of Facts.

That Davenport-Bethel Company, plaintiff herein, was to buy the property described in plaintiff's petition, consisting of two city blocks, or 20 town lots, known as "Alsace addition" to the city of Tulsa, Okla.

That said property was purchased and paid for by the said Davenport-Bethel Company; that plaintiff did pay for all the building material used in the construction of said buildings and did pay for all the work and labor performed on said buildings.

It was further agreed by the parties that the defendant would furnish the plans and specifications for said buildings; that the defendant should select and order all material necessary to be used in the construction of said buildings; that the defendant would employ the laborers necessary to perform the labor, and fix their wages, and that defendant would keep the time served by each workman; that the defendant would report to the plaintiff at the close of each week the amount of building material purchased and the price thereof, and the hours or days of labor performed by each employee, and the amount due each laborer for the work performed, and that the defendant should have the general supervision of the work in the construction of said buildings.

The court further finds from the evidence that the plaintiff herein agreed to and did finance the building of said houses on said lots; that plaintiff paid for all building material used in the construction of said houses and for all labor performed on the same.

We further find it was agreed that plaintiff would pay all the building expense accruing during the time said houses were under construction, and it was further agreed, when a house was completed, a mortgage should be executed against said house and lot sufficient to cover the entire cost of building said house; that it was tentatively agreed when a house was completed the lot upon which said completed house was located would be deeded by this plaintiff to W. L. Criner, brother of the defendant, in trust for the plaintiff and defendant; that upon the execution of a deed by

the plaintiff to the said W. L. Criner to the individual lot or lots upon which completed houses were located, then it became the duty of the said W. L. Criner, as trustee, to apply for and secure a loan on said house and lot, or houses and lots, as the case might be, in a sufficient amount to cover the entire cost of the house and lot inclusive and to execute a mortgage against said house and lot to secure the payment of said loan.

The court further finds that at the time of the completion of the first two or three houses the plaintiff called upon or talked to the said W. L. Criner and informed him the time had arrived when the deed to the lot and a mortgage thereon should be executed; plaintiff was informed then and there by the said W. L. Criner and Mrs. Criner, the wife of the said W. L. Criner, would not sign said mortgages.

The court therefore concludes that the arrangement theretofore had by and between plaintiff and defendant, to the effect that "when a house was completed the house and lot should be deeded to W. L. Criner in trust and he in turn should execute the mortgages to secure the entire cost of the lots and houses," failed.

The court finds there was no agreement between these parties at any time that the entire property involved should be deeded to the said W. L. Criner.

We do find, however, that the deed from the grantor, for the entire tract of land, at the time it was delivered to the plaintiff by the defendant, did contain the names of W. L. Criner and his wife as grantees.

We further find that the deed so executed was delivered to the plaintiff and the plaintiff erased the name of the said W. L. Criner in said deed and wrote in place thereof the name of this plaintiff.

The defendant, plaintiff in error, suggests eleven assignments of error, as follows, to wit:

(1) That the decision and judgment of the court is contrary to law; (2) judgment is contrary to evidence; (3) judgment is contrary to law and evidence; (4) court erred in denying defendant trial by jury; (5) decision not sustained by evidence; (6) errors of law occurring at the trial; (7) court erred in permitting incompetent testimony; (8) court erred in refusing to make findings of facts: (10) court erred in refusing counsel to argue questions of law and facts; (11) court erred in overruling motion for new trial.

Having carefully studied the entire record in the case, the assignments of error, and the argument of plaintiff in error in support thereof, and the rulings of the trial court, we deem it unnecessary to enter into an extensive discussion of said assignments of error; and further say that we do not agree with the contention of plaintiff in error that the trial court erred in its rulings.

The defendant contends that the erasure of the name by the plaintiff of W. L. Criner, as grantee in the deed from the grantor, and the insertion of the name of the plaintiff therein as grantee, was in fraud of his rights. With which contention we do not agree.

Plaintiff in error cites the case Francen v. Okla. Star Oil Co., 80 Okla. 103, 194 Pac. 193, in support of his contention.

The second paragraph of the syllabus of said opinion reads:

"Any alteration in written instrument made after its execution and without the consent of the party to be bound which varies the legal effect of the instrument or changes the rights or liabilities of the parties, although there is no fraud, vitiates the instrument."

It will be observed, in order to avail one's self of the above rule, it must clearly appear that the change made varies the legal effect of the instrument or changes the rights or liabilities of the parties.

In the instant case, W. L. Criner, whose name appeared in the deed when it was delivered to the plaintiff, had no interest whatsoever in the land involved. Neither W. M. Criner, the defendant herein, or his brother, W. L. Criner, even claim that W. L. Criner ever had any interest in the property involved. In fact, they both testify that W. L. has no interest in the property. It cannot, therefore, be said that the legal effect of the deed was changed by erasing the name of W. L. Criner and writing in place thereof the name of this plaintiff, who, under its contract, was to buy and pay for said land upon the delivery of a properly execute deed to said plaintiff.

The third paragraph of the syllabus in said case, Francen v. Okla. Star Oil Co., supra, reads:

"In determining whether an alteration is a material alteration, the test is, not whether an alteration increases or reduces a party's liability, but whether the instrument expresses the same contract—whether it will have the same legal effect and operation after the alteration as before."

Having determined the real contract between plaintiff and defendant to be that the plaintiff was to purchase the land and

finance all the expense of building houses on the same; that defendant was to furnish plans, specifications, and superintend the construction of said buildings, and when said buildings were completed they were to be sold, and the profits arising out of said building project, if any, should be divided equally, share and share alike, between plaintiff and defendant, we think the mere act of erasing the name of W. L. Criner, whose name inadvertently appeared in said deed, and inserting the name of the plaintiff therein, who is in law and fact the rightful grantee, did not pertain in the least degree to the contract between plaintiff and defendant heretofore determined by the court.

The real contract between the parties, as determined by this court, was not expressed in the deed. It had no place in the deed. It was separate and distinct from the deed.

It, therefore, follows that the change of the name of the grantee therein did not vary the terms of the contract between plaintiff and defendant, and, for that reason, the law cited by the defendant is inapplicable.

We do not think the trial court erred in holding that the changing of the name of the grantee in the deed was immaterial.

Defendant contends that by reason of the terms of the oral contract between plaintiff and defendant, as heretofore determined, a special partnership was created, and that he is entitled to an accounting herein.

We are not willing to say that under the law of partnership a special or any kind of a partnership was ever created between plaintiff and defendant.

In the case of Higgenbotham et al. v. Stanley, 36 Okla. 304, 128 Pac. 238, the court, in the body of the opinion, said:

"The sharing of profits and losses is the principal criterion of a partnership."

In Gorman et al. v. Carlock, 72 Okla. 104, 179 Pac. 38, it is said:

"A mere community of interest as owners of specific property, or of the profits from a particular adventure, or business, does not necessarily, of itself, constitute the co-owners partners."

There is no evidence in this case to show that plaintiff and defendant were to share equally in the profits and losses of their business enterprise, but the evidence does conclusively show that plaintiff and defendant were to share equally in the profits arising from the same.

There is no evidence to show that defendant could be held liable for any losses that might accrue. The best that could be said

of plaintiff's and defendant's relations is, they entered into a mutual speculative enterprise which proved to be a failure.

The plaintiff bought and paid for the land. The plaintiff also paid for all the material that went into the construction of said houses, and for the labor thereon. The evidence further shows that the buildings, when completed, would not sell upon the market for the price of the land and buildings constructed thereon.

We are of the opinion the defendant was and is not entitled to an accounting.

The defendant further contends that the court erred in denying him a trial by jury. He did not see fit to brief this error, and, since he did not do so, thereby waived it.

Defendant alleges other and minor errors on the part of the trial court, all of which we have carefully weighed, and we are of the opinion that a discussion of them would be a waste of time.

The trial court in rendering judgment found, among other things:

(1) That the defendant proceeded to construct four dwelling houses on four of said lots, completing the same about August, 1928; that the total cost of the houses and other improvements placed upon the lots, including the cost of the land itself, exceeded the reasonable value thereof.

(2) That there is no evidence in the case that the defendant W. M. Criner made any effort at all to sell said houses.

(3) That it was agreed between the parties that the plaintiff, Davenport-Bethel Company, should own the real estate and that the defendant W. M. Criner should be entitled to one-half of the net profits arising from the sale of the houses after the same had been built.

(4) That the plaintiff is the owner in fee simple of the property described in the petition, the same being the "Alsace Addition" to the city of Tulsa, Okla.

(5) That the defendants, W. M. Criner and W. L. Criner, have no right, title, or interest in the same.

(6) That the defendant, and cross-petitioner, Oklahoma City Building & Loan Association, has a good and valid mortgage lien upon each of the four lots described in its answer and cross-petition and that the same are first liens upon said premises for the amounts secured thereby.

(7) That the defendant W. L. Criner holds the legal title as a mere trustee without interest in the land and should execute

a deed conveying the legal title to the plaintiff.

The judgment of the lower court is affirmed.

HEFNER, ANDREWS, and SWINDALL, JJ., concur. LESTER, V. C. J., and CLARK, J., concur in conclusion. MASON, C. J., and HUNT and RILEY, JJ., absent.