### J. P. MARTIN CO. v. O'CONNOR et al.

No. 16396—Opinion Filed April 20, 1926.

Rehearing Denied Nov. 16, 1926.

1. **Appeal and Error—Questions of Fact—Existence of Partnership Relation.**

It is well established that, where a partnership is disputed, its existence in a given case is a question of fact to be determined

by the court or jury; and where such an issue is submitted to the court, and the evidence reasonably sustains the court's findings, such findings will not be disturbed by the appellate court.

## 2. Partnership—Employee not Made Partner by Accepting Share of Profits as Remuneration.

A contract for the remuneration of a person engaged in a business by a share of the profits of the business does not of itself make the servant or agent a partner in the business. In such a case there is no community of interest in the capital stock; the agent or servant does not act as, and is not a principal, trader; he is not clothed with the usual powers, rights, or duties of a partner, but is subject to the orders of the owner of the business, and he has nothing to do with the losses, except as they affect the amount of his remuneration.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by J. P. Martin Company against W. F. O'Connor and Nellie A. O'Connor on promissory note and to foreclose mortgage. Judgment for defendants on cross-petition, and plaintiff appeals. Affirmed.

A. J. Biddison and Harry Campbell, for plaintiff in error.

Cheatham & Beaver, for defendants in error.

Opinion by MAXEY, C. The parties appear in this court as they did in the court below, and will be referred to as plaintiff and defendants. The plaintiff, J. P. Martin Company, is a mercantile corporation, with a chain of stores in various places, one of which was located at Bristow, Creek county, and the defendant W. F. O'Connor had been in the employ of the plaintiff for sometime prior to the institution of this suit, as manager of the store located at Bristow. Up to the 16th of January, 1922, the defendant O'Connor had been working on a salary, and he was desirous of having an increase in his salary, and on the 16th day of January, the plaintiff and defendant entered into the following contract:

"Know All Men By These Presents.

"That the J. P. Martin Company, a corporation, duly incorporated under and by virtue of the laws of the state of Oklahoma, hereinafter referred to as 'party of the first part' and J. P. Martin, W. F. O'Connor, and C. R. Anthony, residents of Pawnee county, Okla., hereinafter referred to as 'parties of the second part' witnesseth:

"That, whereas, the party of the first part

the said J. P. Martin Company, is the owner of a branch store in the city or town of Bristow, Okla., and,

"Whereas, the parties hereto have agreed that the said income or net profits from said branch store shall be paid to and become the property of the parties of the second part by reason of said parties holding all of the stock in the said corporation appropriated to the said branch store.

"Now, therefore, be it agreed as follows: That the whole of the said net profits of the store owned by the party of the first part in the town or city of Bristow, Okla., shall be appropriated and divided among the said parties of the second part in equal proportions, the said J. P. Martin to receive one-third of the whole of said net profits; the said W. F. O'Connor to receive one-third of the whole of said net profits; and the said C. R. Anthony, to receive one-third of the whole of said net profits of said business or branch store. That an accounting shall be had at such proper times as the parties hereto shall agree upon, at which time the profits from the said branch store or business shall be paid to each of the parties of the second part in the proportion herein agreed upon.

"It is further expressly agreed, that the method herein determined upon for the apportionment of the net profits of the said business to which reference is made, shall in no manner influence the control and management of said business, but that the same shall be controlled and managed pursuant to by-laws and other provisions adopted and approved by the stockholders of the said J. P. Martin Company, and pursuant to the terms and conditions of the agreement entered into between all of the stockholders of the said J. P. Martin Company, on the 11th day of February, 1920. It being understood the sole purpose of this contract and agreement being to determine upon the disposition of the profits of the said Bristow branch of the J. P. Martin Company.

"In witness whereof, the parties hereto have caused this agreement to be signed in triplicate this 16th day of January, 1922.

"J. P. Martin Company, By J. P. Martin.

"(Seal)

"Attest: M. A. Lyons, Secretary.

"J. P. Martin, C. R. Anthony, W. F. O'Connor."

O'Connor worked under this contract until the 6th day of September, 1923. It appears from the evidence that during the year 1922, O'Connor made weekly and monthly statements of business at Bristow, which statements included the goods purchased during that month, goods sold, and expenses of running the store, and other items; that reports from O'Connor to the company were taken by the company and tabulated, and a

statement made up by the company showing the condition of business at Bristow, and a copy of that statement was sent to W. F. O'Connor for his information. This practice continued until the first of January, 1923, when the J. P. Martin Company notified O'Connor that they would discontinue sending him these reports of business each month after that date. O'Connor continued in the employ of the J. P. Martin Company at the Bristow store until the 6th of September, 1923, when his services were dispensed with. No settlement was made between O'Connor and the J. P. Martin Company, although O'Connor says he requested a settlement at various times; and on October 1, 1923, the J. P. Martin Company, a corporation, commenced this suit against the defendants W. F. O'Connor and Nellie A. O'Connor on a promissory note for the sum of $3,500, with interest and attorneys' fees, and to foreclose a mortgage given by O'Connor and wife on certain real estate in the town of Bristow. The defendants W. F. O'Connor and Nellie A. O'Connor filed an answer and cross-petition to plaintiff's cause of action, in which they filed a general denial, except such allegations as were admitted. They admitted the execution and delivery of the note and mortgage sued on, but denied that said note and mortgage was past due and unpaid, but alleged that the same had been paid in full, by reason of services rendered by W. F. O'Connor to the plaintiff from the 16th day of January, 1922, to the filing of this suit; and that instead of his being indebted to the plaintiff, the plaintiff upon a fair accounting between the parties was indebted to him. He then set up the execution of the above-quoted written agreement, and alleged that he had not received any part of the profits provided for him in said contract, and alleged that the net profits of the Bristow store during the time that he was employed under said contract amounted to $30,000 or more, and that by reason thereof, the plaintiff, J. P. Martin Company, become indebted to the defendant W. F. O'Connor in the sum of $10,000, and prayed for a cancellation of the note and mortgage sued on, and that he have judgment against the plaintiff over the above said indebtedness in the sum of $6,000.

In his cross-petition, the defendant W. F. O'Connor sets up a copy of the contract entered into between him and the plaintiff on the 16th day of January, 1922; and alleges that on said date the store at Bristow was owned by the plaintiff, and this defendant was taken into said store as a partner with the plaintiff, for the purpose of managing and running the same for a monthly salary,

and for one-third of the net profits; that said partnership was dissolved by the act of plaintiff in taking over the business of said store and excluding this defendant therefrom about the time of the bringing of this suit. He further alleges that the plaintiff has failed and refused to make an accounting to him of the profits of said store to the damage of the defendant in the sum of $10,000; and alleges that from the 16th day of January, 1922, up to the dissolution of the partnership, the net profits of said store amounted to $30,000, and that upon a proper accounting his one-third of the profits would amount to $10,000; and he prayed that an accounting be had; that said partnership be dissolved, and that he have and recover of the plaintiff the sum of $10,000 and the costs of this action.

To this answer and cross-petition, the plaintiff filed its plea, wherein it denies each and every allegation of said answer and cross-petition. The case went to trial on the issues joined, before the court and a jury, and resulted in a verdict for the defendants, which verdict is in the following language:

"We the jury impaneled and sworn in the above entitled cause do, upon our oaths, find for the defendant, and fix the amount of his recovery at $899.25.

"The amount is amount due defendant after amount claimed by plaintiff is deducted from the amount due defendant. W. J. Briscoe, foreman."

A motion for a new trial and a motion **non obstante veredicto** was made. Both of these motions were overruled by the court, and time was given to prepare and serve case-made, and the case-made was prepared, served, settled, and signed, and the case is now before this court on petition in error, with case-made attached.

It was contended by the plaintiff on the trial of the case, that the contract above set out was a contract of partnership, and the defendant contended on the trial, that it was not a contract of partnership, but that it was an employment contract or a working agreement. The court evidently took the view that the contract was not a partnership agreement, but was a contract between employer and employee, as will appear hereafter. We are inclined to think the court was right in holding that the contract herein set out was not a partnership contract, but was a working agreement between plaintiff and defendant. It was contended during the trial that the defendant could not recover on his answer and cross-petition for the reason that there had never been any accounting between the partners, and that

one partner could not sue the other until there had been an accounting and the amount due each fixed. As we hold there was no partnership, it is not necessary to discuss the question of accounting.

In the case of Boorigie v. Boorigie, 98 Okla. 64, 223 Pac. 874, it was held:

"It is well established that, where a partnership is disputed, its existence in a given case is a question of fact to be determined by the court or jury; and, where such an issue is submitted to the court, and the evidence reasonably sustains the court's findings, such findings will not be disturbed by the appellate court."

In this case objection was made to the introduction of any testimony tending to prove the amount of purchases at the Bristow store, or amount of sales, or amount of expenses. In other words, the plaintiff objected to any testimony tending to prove an accounting, on the ground that the books of the company were the best evidence. The evidence of W. F. O'Connor was all the evidence offered in the case by either party, and O'Connor said that the books were kept by the plaintiff, and that he only kept a memorandum of his weekly and monthly reports, and that when he was put out of the store, he left that memorandum book in the store. Counsel for plaintiff insisted strenuously that the only way you could prove the purchases and sales and other expenses was by the books. O'Connor testified that the books were in possession of the plaintiff, and he was unable to produce them. The plaintiff did not deny that the books were in its possession, and did not offer to produce them, and did not offer any testimony to contradict O'Connor's testimony, as to what the purchases and sales and other expenses amounted to. O'Conner had kept the statements sent to him each month during the year 1922 by the plaintiff, giving the amount of purchases, sales, and other expenses, and they were admitted in evidence by the court, and O'Connor testified what the amount of purchases and sales and expenses were from the 1st of January, 1922, up to the 6th of September, 1923. He made a very intelligent statement of the expenses of the store during the time he was there, and if he did not state the figures correctly, as shown by the books, it was within the power of the plaintiff to have produced the books and corrected his statement, but plaintiff declined to introduce any testimony whatever, and relied on its contention, that the books were the only evidence competent to show the amount of purchases, sales and expenses.

We are inclined to think, and so hold, that the testimony introduced by O'Connor, as to the amount of purchases, sales, and expenses, was competent under the peculiar circumstances of this case. The plaintiff had it in his power to correct any statement made by him, if it was not correct. The instructions given to the jury by the court are based upon the theory that the contract herein set out was not a partnership contract, but a contract between employer and employee; and, under that theory, we think the instructions of the court are right. The statements introduced in evidence by O'Connor, showing the business transaction in 1922, amounts in the aggregate, net sales, $130,361 37, and purchases during that time amounted to $109,249.63, and that amount of goods on hand on the 1st of January, 1923, in the Bristow store, according to an inventory taken at that time amounted to $29,-987. It was from these figures that the jury made up their verdict, and we cannot say that the verdict is not reasonably supported by the testimony.

In conclusion, we will say that we have examined the authorities cited by both plaintiff and defendant, and have given the contract herein set out careful study, and we are of the opinion that it is not a partnership agreement, but is a working agreement between employer and employee. 30 Cyc. page 376, defines a contract of this character in the following language:

"A contract for the remuneration of a person engaged in a business by a share of the profits of the business does not of itself make the servant or agent a partner in the business. In such a case there is no community of interest in the capital stock; the agent or servant does not act as, and is not a principal, trader; he is not clothed with the usual powers, rights, or duties of a partner, but is subject to the orders of the owners of the business, and he has nothing to do with the losses, except as they affect the amount of his remuneration."

And the Supreme Court of Kansas, in the case of Durkee v. Gunn, 21 Pac. 637, and a number of other cases from the different states that had similar contracts for consideration, lead us to hold that the contract in this case is not a partnership contract, but only a working agreement. See Coward v. Clanton (Cal.) 55 Pac. 147; McKinley v. Lloyd, 128 Fed. Rep. 519; Higgenbotham et al. v. Stanley, 36 Okla. 302, 128 Pac. 238; section 8103, Comp. St. 1921.

On the whole case, we think that substantial justice has been done between the parties, and the judgment of the trial court is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 879 §2853; 30 Cyc. p. 476; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (2)30 Cyc. pp. 376, 377; anno. 18 L. R. A. (N. S.) 1032; L. R. A. 1918F, 801; 20 R. C. L. p. 834; 3 R. C. L. Supp. p. 1104; 4 R. C. L. Supp. p. 1379.