PUBLIC LANDS
The use of the leasehold estate for purposes of collateral for a loan is not within the provisions of 64 O.S. 253B [64-253B] (1976), nor would the change in ownership of a leasehold estate effected by the death of a joint tenant or the award of property in a divorce settlement or an award of property under the Bankruptcy Act come within the provisions of 64 O.S. 253 [64-253](C) (1976). However, the death of a lessee or his assignee or transferee where such interest was held as tenant in common would be subject to the fee to the extent of the inheritability of the interest by the heirs of the deceased tenant in common. It is further the opinion of the Attorney General that the above interpretation of these sections is not altered by the amendments contained in House Bill 1368, enacted by the First Regular Session of the Thirty-sixth Oklahoma Legislature (1977). The Attorney General is in receipt of your letter wherein you ask the following questions: "1. Do the provisions of 64 Okl. St. Ann. 253 C. direct the Commissioners of the Land Office to charge a fee equal to fifty percent (50%) of the one (1) year's rent for the assignment of the interest of a lessee, other than an assignment to the heirs or devisees of a deceased assignee or lessee of a preference right lease ? "2. Do the provisions of 64 Okl. St. Ann. 253 B., directing the Commissioners of the Land Office to charge a fee equal to fifty percent (50%) of one (1) years rent for an assignment of a preference right lessee's interest in his lease land, also direct the Commissioners of the Land Office to charge a fee of fifty percent (50%) of one (1) year's rent for an assignment of a lease as collateral security for a loan?" The pertinent portions of the statutes to which your questions are directed provide as follows: "B. Any lessee holding a preference right lease on agricultural or grazing lands under the management and control of the Commissioners of the Land Office may assign his interest in leased land with permission of the Commissioners of the Land Office; provided, that before granting such assignment permit the Commissioners charge a fee for such permit equal to fifty percent (50%) of one (1) year's rent. "C. Subject to the approval of the School Land Commission, the heirs or devisees of a deceased assignee or lessee of a preference right lease under the management of the Commissioners of the Land Office shall succeed to the interest and have all the rights of the lessee under the terms of the original lease agreement and such lease or assignment shall not terminate by reason of the death of any assignee or lessee of a preference right lease; provided, that before granting such assignment permit the Commission charge a fee for such permit equal to fifty percent (50%) of one (1) year's rent." 64 O.S. 253 [64-253] (1976). (Emphasis supplied) Your first question refers to Subsection C quoted above and it is to be noted that said Subsection C has two prerequisite conditions prior to the imposition of a fee of fifty percent of one year's rent. First, the lessee or assignee must be deceased and secondly, the interest of the lessee or assignee must pass to his heirs or devisees. In your letter you express concern to whether the fee would be required upon the death of a lessee or assignee who held his leasehold interests as a joint tenant or a tenant in common or whether such a fee would be assessable upon an award of a leasehold interest in a divorce settlement or an award of property under the federal Bankruptcy Act. Title 25 O.S. 1 [25-1] (1971) provides as follows: "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained." The terms "heirs" or "devisees" not having been defined in the above-quoted statute their ordinary meaning must be applied and as to "heirs" the Oklahoma Supreme Court has interpreted that word in the case of In Re Thompson's Estate, 179 Okl. 240, 65 P.2d 442 (1937), which concerned the interpretation of a federal statute concerning heirs of Indian blood and the Court stated in pertinent part as follows: " 'Sec. 7. Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title or interest to any re stricted lands, moneys, or mineral interests of the Osage Tribe: Provided, That this section shall not apply to spouses under existing marriages. Approved, February 27, 1925.' "Here the word 'heirs' is used in the sense usually accorded it in American law and as meaning those persons upon whom the devolution of the property of an intestate is cast by operation of law." In Re Thompson's Estate, supra. Thus, an heir is one who would inherit property upon the death of the owner by operation of law. While no Oklahoma cases defining the phrase "devisee" has been found, its ordinary meaning in law would undoubtedly be followed and is accepted in Oklahoma. Thus, in Black's Law Dictionary, (4th ed. 1957), the word "devisee" is defined as follows: "Devisee. The person to whom lands or other real property are devised or given by will. 1 Pow.Dev. c. 7. In re Lewis' Estate, 39 Nev. 445, 159 P. 961, 962,4 A.L.R. 241." Considering the questioned areas in your letter, the death of a joint tenant who held a leasehold estate in that manner would not satisfy the definition of heir or devisee insofar as the death of a joint tenant does not pass anything from him to the survivor. Clovis v. Clovis, Okl., 460 P.2d 878 (1969). As to such a leasehold interest held as tenants in common the interest of the deceased lessee who held his lease as a tenant in common would be subject to the fee to the extent that his interest passed to his heirs or devisees. Both the divorce settlement and Bankruptcy Act questions would not meet the first condition of Subsection C insofar as the death of lessee or assignee would not be involved. Your second question involves the interpretation of the word "assign" or "assignment" insofar as Subsection B above-quoted allows a lessee to assign his interest in the leased land upon the payment of fifty percent of one year's rent and upon approval of the Commissioners of the Land Office. With reference to the meaning of the word "assign" or "assignment" in regard to a leasehold interest, the Supreme Court of Oklahoma determined the definition or meaning of such a word in the case of Leckie v. Dunbar,177 Okl. 355, 59 P.2d 275 (1936), and the Court stated in part as follows: "In order to determine whether a particular instrument is an assignment or sublease, we must look to the interest passed. For an assignment the whole interest must pass for the full time of the lease. There can be an assignment of part of the premises providing the whole time and whole interest of that part is passed. In a sublease, however, the lessee does not pass his whole interest for the full remainder of the lease, but retains some sort of reversionary interest." Thus, it can be easily determined that an assignment for collateral purposes to secure a loan would not be the assignment of the whole interest in the leased premises for the full time of the lease and would not come within the ordinary meaning of the word "assign" as used in Subsection B. As you are undoubtedly aware since receipt of your question concerning the above statutes the First Regular Session of the Thirty-Sixth Oklahoma Legislature (1977), again amended 64 O.S. 253 [64-253] by House Bill No. 1368 signed into law by the Governor of the State of Oklahoma on the 27th day of May, 1977. Said Bill amends the pertinent portions of section 253 to read as follows: "B. Any lessee holding a preference right lease on agricultural or grazing lands under the management and control of the Commissioners of the Land Office may transfer his interest in leased land with permission of the Commissioners of the Land Office; provided, that before granting such transfer of lease the Commissioners charge a fee for such permit equal to fifty percent (50%) of one (1) year's current rent; provided, further, that said permit fee equal to fifty percent (50%) of one (1) year's rent shall not be charged in a given case if all of the proposed transferees are related to the transferor within the third degree of consanguinity or affinity. "C. Subject to the approval of the School Land Commission, the heirs or devisees of a deceased lessee or transferee of a preference right lease under the management of the Commissioners of the Land Office shall succeed to the interest and have all the rights of the lessee under the terms of the lease agreement and such lease or transfer shall not terminate by reason of the death of any lessee or transferee of a preference right lease; provided, that before granting such transfer permit to an heir or devisee the Commission shall charge a fee for such permit equal to fifty percent (50%) of one (1) year's rent; provided, further, that said permit fee equal to fifty percent (50%) of one (1) year's rent shall not be charged in a given case if all the designated heirs or devisees are related to the deceased lessee or transferee within the third degree of consanguinity or affinity." (Emphasis Supplied) As can be seen from the amendments to that Act that in reference to your question the pertinent change is to eliminate the word "assign" or "assignment" and substitute therefor the word "transfer" in both Subsections B and C. Again, the word "transfer" has not been defined within the Act, therefore, we must accept its ordinary meaning. The Supreme Court of Oklahoma again has interpreted the meaning of that word in the case of First National Bank and Trust Company of Tulsa v. Oklahoma Tax Commission, Okl., 447 P.2d 441 (1968), wherein they interpreted 69 O.S. 664 [69-664] (1961) which provided in part as follows: " '* * * the bonds issued under the provisions of this Act, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the State. * * *.' (Emphasis supplied)" The Court in construing the word "transfer" within that statute stated in part as follows: "Of the several dictionary definitions of the noun 'transfer' (which is the form of the word used in the statutory provision in question herein), only two would appear to be applicable in this instance. One gives the broad, general meaning of the word as 'Act of transferring, or state of being transferred; the removal or conveyance from one place, person, or thing, to another; transference; transmission;' and the other gives what purports to be the meaning of the word in law: 'The conveyance of right, title, or property, either real or personal, from one person to another, whether by sale, by gift, or otherwise; any act by which the property of one person is vested in another.' " The substitution of the word transfer with reference to Subsection B does not apparently change the intention of the Legislature with reference to the offering of the leasehold interest as a collateral for a loan. This would not constitute the conveyance of the lease to the secured party. Therefore, the result is unchanged and that transaction would not be subject to the fee. With reference to Subsection C the substitution of the word "transfer" for "assign" with respect to the passing of the interest of the lessee or his transferee is still contingent upon the death of such lessee or such transferee and the limitation remains to the passage of such interest to heirs or devisees as further limited by remaining amendment to that act limiting the assessability of the fee to heirs or devisees other than those within the third degree of consanguinity or affinity. Thus, the general intent and thrust of said Subsection C has not been altered. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: The use of the leasehold estate for purposes of collateral for a loan is not within the provisions of 64 O.S. 253B [64-253B] (1976) nor would the change in ownership of a leasehold estate effected by the death of a joint tenant or the award of property in a divorce settlement or an award of property under the Bankruptcy Act come within the provisions of 64 O.S. 253C [64-253C] (1976). However, the death of a lessee or his assignee or transferee where such interest was held as tenant in common would be subject to the fee to the extent of the inheritability of the interest by the heirs of the deceased tenant in common. It is further the opinion of the Attorney General that the above interpretation of these sections is not altered by the amendments contained in House Bill 1368 enacted by the First Regular Session of the Thirty-Sixth Oklahoma Legislature (1977). (JAMES H. GRAY)